IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ADORA R. MORRIS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 21-0027-MU |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Adora R. Morris brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI"), based on disability, under Title XVI of the Act. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 18 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 19. Upon consideration of the administrative record, Morris's brief, the Commissioner's brief, and the arguments made at oral

argument, it is determined that the Commissioner's decision denying benefits should be affirmed as set forth herein.[1]

## I.  PROCEDURAL HISTORY

Morris applied for a period of disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423-425, and for SSI, based on disability, under Title XVI of the Act, 42 U.S.C. §§ 1381-1383d, on January 16, 2018, alleging disability beginning on December 29, 2017. (PageID. 343-56). Her application was denied at the initial level of administrative review on October 31, 2018. (PageID. 224-30). On November 12, 2018, Morris requested a hearing by an Administrative Law Judge (ALJ). (PageID. 196-97). After an initial hearing was held on November 7, 2019, and a supplemental hearing was held on July 10, 2020, the ALJ issued an unfavorable decision finding that Morris was not under a disability from the alleged onset date, December 29, 2017, through the date of the decision, August 5, 2020. (PageID. 56-133). Morris appealed the ALJ's decision to the Appeals Council, and, on November 17, 2020, the Appeals Council denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (PageID. 45-49).

After exhausting her administrative remedies, Morris sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed an answer and the social security transcript on July 20, 2021. (Docs. 11, 12). Both

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Docs. 18,19 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

parties filed briefs setting forth their respective positions. (Docs. 13, 14). The Court conducted oral argument on November 18, 2021. (Doc. 20).

## II.  CLAIM ON APPEAL

Morris alleges that the ALJ's decision to deny her benefits is in error because the ALJ's Residual Functional Capacity (RFC) determination at the fifth step of the sequential evaluation process was not supported by substantial evidence. (PageID. 773).

## III. BACKGROUND FACTS

Morris, who was born on September 9, 1985, was 32 years old at the time she filed her claim for benefits. (PageID. 343). Morris initially alleged disability due to spinal issues, a broken femur, and chest pains. (PageID. 411).  Morris attended high school through 10th grade and later earned her GED and a Certified Nursing Assistant certification. (PageID. 108). She worked as a CNA in either a nursing home or a home health setting from approximately 2009 until 2016, when she stopped working due to a pregnancy. (PageID. 109-10; 411). She had an automobile accident in December of 2017 that resulted in a cervical neck fracture, which healed without surgical intervention, a thoracic fracture that required a thoracic fusion, and a fractured right femur that required surgical repair. (PageID. 111-12). She also suffers from diabetes and depression. (PageID. 112-14). Morris has a driver's license and can drive her children to the bus stop and school and to other nearby locations. (PageID. 117-18). She lives with and cares for her six minor children, along with help from her mom. (PageID. 118). She testified at the hearing that she washes clothes, can make a simple meal, watches some television, reads a lot, and uses a smartphone. (PageID. 118-19). She has trouble

with household chores that require bending, like sweeping, mopping, and cleaning the bathtub. (PageID. 121). In her Function Report, which was completed approximately three months after her automobile accident, Morris stated that she can pay bills, count change, handle a savings account, and use a checkbook and money orders. (PageID. 434).

## IV. ALJ'S DECISION

After conducting a hearing on this matter, the ALJ determined that Morris had not been under a disability since the date the application was filed, and thus, was not entitled to benefits. (PageID. 78). At step one of the five-step sequential evaluation, the ALJ found that Morris had not engaged in SGA since December 29, 2017, the alleged onset date. (PageID. 61). Therefore, she proceeded to an evaluation of steps two and three. The ALJ found that, during the relevant period, Morris had severe impairments of status post thoracic fracture with post pedicle screw fixation T3-9; cervical degenerative disc disease with cervicalgia; status post right femur fracture with ORIF; lumbar spondylosis; diabetes mellitus; obesity; and major depressive disorder, but that she did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (PageID. 61-65). After considering the entire record, the ALJ concluded that Morris had the RFC to perform sedentary work, except that she is unable to push or pull with the right lower extremity, is unable to walk on uneven terrain, can occasionally balance, stoop, kneel, crouch, and crawl, is unable to climb ramps and stairs or ladders, ropes, and scaffolds, can frequently reach, requires the use of a cane to get to and from the workstation, should avoid concentrated exposure to extreme heat or cold, should avoid work around unprotected heights, can perform

simple, routine, repetitive tasks with few work place changes, and can sustain concentration and attention for two-hour periods. (PageID. 65-76). After setting forth her RFC, the ALJ determined that Morris was unable to perform any past relevant work. (PageID. 76). However, considering her age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Morris could perform, and therefore, found that Morris was not disabled within the meaning of the Act. (PageID. 76-78).

## V. DISCUSSION

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In evaluating whether a claimant is disabled, the ALJ utilizes a five-step sequential evaluation:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the

> claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The steps are to be followed in order, and if it is determined that the claimant is disabled at a step of the evaluation process, the evaluation does not proceed to the next step.

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Morris alleges that the ALJ's decision to deny her benefits is in error because the ALJ's Residual Functional Capacity (RFC) determination at the fifth step of the sequential evaluation process was not supported by substantial evidence. (Doc. 13 at p. 2). A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. The RFC assessment is based on "all of the relevant medical **and other evidence**." 20 C.F.R. § 404.1545(a)(3). In addition to the medical evidence, the ALJ is to consider the claimant's daily activities when evaluating the symptoms and severity of an impairment. *Id*. at 871 (citing 20 C.F.R. § 404.1529(c)(3)(i)).

Morris argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ found the functional assessment and opinion provided by a consultative examiner, Brian Hopkins, D.O., to be internally inconsistent and overly restrictive. (PageID. 74). The regulations applicable to the evaluation of medical evidence provide that the ALJ will consider the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant (which includes length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and examining relationship), (4) specialization, and (5) other factors. *See* 20 C.F.R. § 404.1520c(c). The most important factors to be considered by the ALJ in

determining the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 1520c(b)(2). Therefore, the ALJ is required to explain how he or she considered the supportability and consistency factors in the written decision but is not required to articulate how the other factors were considered. *Id.* Because many claims have voluminous records from multiple sources, the ALJ is not required to articulate how he or she considered each medical opinion from one medical source individually. 20 C.F.R. § 1520c(b)(1).

      Morris contends that the ALJ "cherry picked" from Dr. Hopkins's findings to support her conclusion because she did not regurgitate the entirety of Dr. Hopkins's findings and opinions in the Decision. However, the ALJ is not required to do so. *See* 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."); *see e.g., Poole v. Kijakazi,* 2022 WL 1651196, at *2 (M.D. Ala. May 24, 2022) (in considering whether a medical source's opinion is supported by the source's own records and consistent with the other evidence of record, "an ALJ need only explain the consideration of the factors on a source-by-source basis; the regulations do not require the ALJ to precisely explain the consideration of each opinion within the same source"). "An ALJ 'is under no obligation to "bridge" every piece of evidence he finds inconsistent with a specific opinion. [ ] Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review.'" *Poole,* 2022 WL 1651196, at *3 (quoting *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021)); *see also Dyer v. Barnart*, 395 F.3d 1206,

1211 (11th Cir. 2005) (holding that ALJ is not required to discuss every piece of evidence as long as the reviewing court can surmise that the ALJ considered the plaintiff's medical condition as a whole).

After setting forth a summary of Dr. Hopkin's records, the ALJ made the following findings concerning the functional limitations assessed by Dr. Hopkins based on his consultative examination:

> The functional assessment and opinion provided by Dr. Hopkins is internally inconsistent and overly restrictive (Exhibit 17F). The exam noted negative straight leg raise with no swelling, effusion, tenderness or deformity. Dr. Hopkins opined that the claimant was able to only occasionally able [sic] to handle, finger, and feel. However, during the exam, the claimant was able to pinch, grasp, and manipulate small and large objects. The cervical x-rays do not correlate to the functional limitation provided by Dr. Hopkins to only occasionally reach in all other directions. The last neurological visit identified normal balance and motor strength 5/5 (Exhibit 14F).

(PageID. 25-26, 30). The ALJ complied with the applicable regulations. She set forth several examples of internal inconsistencies in Dr. Hopkins's records and examples of how Dr. Hopkin's limitations were overly restrictive. Additionally, based on a complete review of the medical records and the thorough overview of the records contained in the ALJ's Decision, *see* PageID. 66-72, substantial evidence supports her conclusion that Dr. Hopkins's opinions were internally inconsistent and overly restrictive. It is clear to the Court that the ALJ considered Morris's medical condition as a whole in assessing her RFC. *See Dyer*, 395 F.3d at 1211. Therefore, the Court finds that the ALJ did not err in her assessment of Dr. Hopkins's medical opinions.

Morris also argues that the ALJ erred in determining her RFC because she failed to address whether Morris needed a cane or rollator walker when performing the

standing and walking requirements of sedentary work. However, both the RFC and the hypotheticals posed to the vocational expert stated that she "requires the use of a cane to get to and from the workstation." (PageID. 65, 95-97). It should first be noted that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled.'" SSR 96-9p, 1996 WL 374185, at *1 (July 2, 1996). "If the performance of past relevant work is precluded by an RFC for less than the full range of sedentary work, consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience." *Id.* The Court is also mindful of the fact that a claimant's RFC "is not the least an individual can, but the most, based on all of the information in the case record." *Id.* at *2. Regarding medically required hand-held assistive devices, SSR 96-9p states:

> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded. In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

*Id.* at *7 (footnote omitted).

In this case, the ALJ sought testimony from a vocational expert with regard to whether there are jobs available in the national economy that Morris can perform with her limitations, including the requirement of a cane to ambulate to and from the workstation. The ALJ cited three such jobs. Having reviewed the totality of the evidence, the Court finds that the ALJ did not err in assessing Morris's RFC.

## CONCLUSION

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Chester*, 792 F.2d at 131. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. Having reviewed the ALJ's decision and the entire transcript and considered the arguments made by Morris, the Court finds that the ALJ's determination that Morris was not disabled is supported by substantial evidence and based on proper legal standards.

Based on the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **9th** day of **June, 2022**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**